**UNITED STATES of America**

v.

**Rene Ruben SALMON.**

**Crim. No. B–80–524.**

United States District Court,
S. D. Texas,
Brownsville Division.

Jan. 13, 1981.

Charles Lewis, Asst. U. S. Atty., Brownsville, Tex., for plaintiff.

Daniel Alfaro, Corpus Christi, Tex., for defendant.

## MEMORANDUM AND ORDER

VELA, District Judge.

On the 1st day of December, 1980, came on to be heard Defendant's Plea in Bar and Motion to Dismiss Indictment. After hearing evidence and arguments on the same, and after due consideration, this court is of the opinion that the same should in all things be DENIED.

It is therefore ORDERED, ADJUDGED and DECREED that Defendant's trial on counts 13 and 14 of the indictment is not barred by the Double Jeopardy provisions of the United States Constitution and his motion is therefore denied as to that point. Following denial of said motion, this court herewith enters its findings pursuant to the dictates of *United States v. Dunbar*, 611 F.2d 985 (5th Cir. 1980) (en banc), and declares that Defendant has failed to tender a prima facie non-frivolous double jeopardy claim and finds that Defendant's Motion to Dismiss on double jeopardy grounds is totally FRIVOLOUS.

It is therefore ORDERED, ADJUDGED and DECREED that this court retains jurisdiction to proceed with trial of Defendant on counts 13 and 14 of the indictment pending his appeal of this order.

### FACTS

On February 23, 1978, DEA agents apprehended Defendant after he had crossed the Rio Grande near Penitas, Texas, in the vicinity of a large cache of marihuana. Defendant was arrested and charged by Magistrate's complaint with conspiracy with intent to distribute and possession with intent to distribute approximately 3,640 pounds of marihuana. A Grand Jury sitting at Brownsville, Texas, returned an indictment against Defendant on March 14, 1978, charging him with importation and possession of marihuana with intent to distribute, said cause being Criminal No. B–78–84. Based on Defendant's successful performance on a polygraph examination, which Defendant had volunteered to take, the indictment was dismissed on the government's motion of nolle prosequi on May 5, 1978.

No jury was ever empanelled or sworn, and no evidence was ever taken in said cause.

On October 7, 1980, a Grand Jury sitting at Brownsville, Texas, handed down an indictment against Defendant and six Co-Defendants, charging Defendant in all fifteen counts of the indictment. All the counts related to the importation and possession of marihuana and conspiracy to import and possess marihuana, said cause being the case at bar, Criminal No. B–80–524. Defendant was arrested subject to the second indictment on October 10, 1980. Counts 13 and 14 of this indictment charged Defendant with the same offenses he had been charged with in the 1978 indictment. It is these two counts that Defendant wishes

dismissed on double jeopardy and speedy trial grounds.

## DOUBLE JEOPARDY

■ Re-indictment for the same offense by a subsequent Grand Jury does not involve the bar of double jeopardy unless trial of the original indictment has ended in such a way that jeopardy has attached. *United States v. Jasso*, 442 F.2d 1054, 1056 (5th Cir.) (per curiam), *cert. denied*, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971). A Defendant is not put in jeopardy until he is "put to trial before the trier of facts". *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). In a non-jury trial, jeopardy attaches when the first witness is sworn. *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Where the original prosecution of a case does not reach either of these stages, jeopardy has not attached, and re-indictment for the original offenses does not involve a double jeopardy violation. *United States v. Garcia*, 589 F.2d 249 (5th Cir.) (per curiam), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979).

■ In the case before us, Defendant's original indictment never reached the trial stage. Therefore, jeopardy did not attach. For the reasons set out above, this court feels that Defendant's motion, as it relates to alleged double jeopardy violations, is frivolous and so lacking in merit that it presents no substantial question for appellate review.

## SPEEDY TRIAL

■ The question before us then, is whether the thirty-four month delay between Defendant's original indictment and December 1, 1980, violated his statutory and constitutional rights to a speedy trial.[1] The very nature of the speedy trial right compels courts to approach such cases on an ad hoc basis. *Turner v. Estelle*, 515 F.2d 853 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976). A flexible standard based on practical considerations is to be used in determining whether a denial of speedy trial has occurred. *Strunk v. United States*, 412 U.S. 434, 438, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56 (1973).

The case before us is atypical when viewed in the ordinary context of claimed speedy trial violations. The issue we face is, in essence, whether a Defendant has a constitutionally protected right to require that the government file charges against him and seek another indictment where the first indictment has been dismissed. There is a dearth of case law in this area, but federal courts have construed the question in the context of state prosecutions. It has been held that dismissal on a simple nolle prosequi, where an indictment is rendered a nullity, where Defendant is at complete liberty and not subject to the stigma of indictment, and where a new indictment cannot be obtained without a Grand Jury hearing, does not result in a speedy trial violation under the Sixth Amendment.[2] *Delph v. Slayton*, 343 F.Supp. 449 (W.D.Va.1972), *modified on other grounds, mem.*, 471 F.2d 648 (4th Cir. 1973); *Hernandez v. Wainwright*, 296 F.Supp. 591 (M.D.Fla.1969). Such a result is mandated by negative implication from the holding of the Supreme Court in *Klopfer v. North Carolina*, 386 U.S.

1. On December 1, 1980, Defendant filed a waiver of his right to a speedy trial based on the second indictment, so the time which has elapsed since the time such waiver was filed will not be considered for purposes of his motion.

2. *Cf., United States v. McKee*, 332 F.Supp. 823 (D.Wyo.1971) (right to speedy trial denied where second murder indictment was filed five years after original indictment had been dismissed solely because Defendant might be paroled from penitentiary in another state). *See also, United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977) (speedy trial should be measured from date of original arrest despite dismissal of original indictment where dismissal resulted not from unrelated charges pending in another court but from desire to prosecute same charges in a more convenient forum).

213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). *Klopfer* held that a Defendant's right to a speedy trial was denied where a state indictment was nolle prossed "with leave" and the threat of prosecution remained hanging over the Defendant for an indefinite period of time. The unusual North Carolina procedural device involved in *Klopfer* tolled the applicable statute of limitations and left Defendant subject to trial at the whim of the prosecutor. Defendant could neither move for dismissal of the indictment nor demand a trial setting while the indictment was in limbo. In such a posture, inordinate delay during which a prosecution remained pending would result in denial of a Defendant's constitutional right to a speedy trial.

There is no practical distinction between these cases and the case at bar. The Federal Rules of Criminal Procedure provide that a prosecution terminates upon granting of a government's motion to nolle prosse an indictment. Fed.R.Crim.P. 48(a). Thus, Defendant was at liberty and not subject to prosecution during the period between the two indictments involved in this case. Given Defendant's intervening release, it is doubtful that the period between Defendant's original arrest and the second indictment falls under the Fifth Circuit's post-arrest, pre-indictment test for speedy trial, and he might be restricted to a due process complaint. *See United States v. Beckham,* 505 F.2d 1316, 1319 (5th Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975); *United States v. Davis,* 487 F.2d 112 (5th Cir. 1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974).

Regardless, under either theory, a showing of substantial actual prejudice to the Defendant is required.[3] *Beckham, supra.* In the present case, Defendant offered no evidence that the delay prejudiced his ability to defend against the two counts in question.[4] Defense counsel did, however, inform the court that the probability of his client's conviction was increased by "fifty percent" due to inclusion of the counts. Such vague and conclusory allegations of prejudice, unsupported by fact, are insufficient in this context. *See United States v. Zane,* 489 F.2d 269 (5th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310 (1974). Such being the case, Defendant's rights to a speedy trial and to due process of law have not been violated, and dismissal will not be required.

Defendant's Speedy Trial Act allegation is equally without merit. Defendant's original indictment was pendent for only fifty-two days, and thus did not surpass the seventy day period within which a Defendant must be brought to trial under the Act. By the Act's very terms, the period of time between dismissal of an original

---

**3.** Passage of time, in and of itself, does not establish a constitutional deprivation of a Defendant's right to a speedy trial. *United States v. Burnett,* 476 F.2d 726 (5th Cir. 1973). However, the thirty-four month delay is sufficiently long to be presumptively prejudicial so as to trigger the four-factor balancing test for denial of a Defendant's Sixth Amendment speedy trial rights as set out in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Under *Barker* a court must consider the "[l]ength of delay, the reason for delay, the Defendant's assertion of his right, and prejudice to the Defendant". *Id.* It is apparent in this case that the delay is equally attributable to the Defendant and the Government, who both consented to Defendant's successful polygraph examination which resulted in dismissal of the original indictment. Based on the facts adduced at the evidentiary hearing on this motion, it cannot be said, nor did Defendant assert, that the delay was the result of the Government's efforts to build a stronger, more complex case against him. As set out more fully in the text, *infra,* no prejudice was shown by Defendant as a result of the delay. Based on all of the evidence presented, this court determines that the *Barker* balancing test has not been met, and dismissal is not required. *United States v. Elorduy,* 612 F.2d 986 (5th Cir. 1980); *United States v. Garcia,* 553 F.2d 432 (5th Cir. 1977) (per curiam). *See Delph v. Slayton,* 355 F.Supp. 888 (W.D.Va.1973), where Defendant's assertion of denial of his right to a speedy trial was analyzed in light of the principles of *Barker* despite the trial court's earlier determination that Virginia's nolle prosequi procedure did not violate his Sixth Amendment guarantee.

**4.** In fact, the counts represent the last transaction of an alleged criminal enterprise of much greater magnitude which involves numerous other counts of the same genre against the Defendant.

indictment on motion of the government and the filing of a superseding indictment is to be excluded from the seventy day computation. 18 U.S.C. § 3161(h)(6) (Supp.1980). Therefore, the maximum possible time computation for Speedy Trial Act purposes would be one hundred-seven days (the fifty-two days of the original indictment and the fifty-five days during which the second indictment was in effect at the time Defendant signed a waiver of speedy trial limits).[5] The dismissal sanctions of the Act[6] did not become effective until July 1, 1980, and are inapplicable to Defendant's original 1978 indictment. *See United States v. Barboza,* 612 F.2d 999, 1000 n.2 (5th Cir. 1980). This court has held that the period during which an original, pre-sanctions indictment was pending will not be added to the pendency of a superseding, post-sanctions indictment to require dismissal for failure to provide a trial within seventy days of filing of the original indictment. *United States v. Garza,* 502 F.Supp. 537 (S.D.Tex.1980). Thus, despite the fact that the total computation exceeds the time limits set by the Act, dismissal of the two counts in question is not required.

Having failed to establish any prejudice resulting from the delay, or any violation of the Speedy Trial Act which might require dismissal, Defendants Motion to Dismiss on speedy trial grounds must also be denied.

---

**5.** This Court does not pass on whether the fifty-five day period during which the second indictment was pendent prior to December 1, 1980 is to be excluded from this computation as a result of Defendant's subsequent waiver of his right to a speedy trial.

**6.** 18 U.S.C. § 3163(c) (Supp.1980).